[Cite as *State v. Earl*, 2024-Ohio-5682.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                    :

    Plaintiff-Appellant,          : CASE NO. 23CA19

    v.                            :

GEORGE M. EARL,                   : DECISION AND JUDGMENT ENTRY

    Defendant-Appellee.           :

_____

APPEARANCES:

Karyn Justice, Portsmouth, Ohio, for appellant[1].

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and
Andrea M. Kratzenberg, Assistant Prosecuting Attorney, Ironton,
Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 11-26-24
ABELE, J.

{¶1} This is an appeal from a Lawrence County Common Pleas Court judgment of conviction and sentence. George Earl, defendant below and appellant herein, assigns the following error for review:

ASSIGNMENT OF ERROR:

"MR. EARL DID NOT KNOWINGLY, INTELLIGENTLY AND
VOLUNTARILY ENTER A GUILTY PLEA, IN VIOLATION
OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES

_____

[1] Different counsel represented appellant during the trial
court proceedings.

> CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE
> OF THE OHIO CONSTITUTION."

{¶2} In September 2021, a Lawrence County Grand Jury returned an indictment in Case Number 21-CR-347 that charged appellant with one count of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony. Appellant entered a not guilty plea. In a separate case related to appellant's removal and destruction of an ankle monitor, Case Number 22-CR-198, appellant entered not guilty pleas to that indictment (tampering with evidence and vandalism).

{¶3} At an August 24, 2022 pretrial hearing for both cases, appellee tendered an 8-year prison sentence final offer in 21-CR-347 (burglary) and agreed not to oppose a judicial release request after appellant served six years. In 22-CR-198 (tampering with evidence and vandalism), appellee tendered a 3-year prison sentence final offer and agreed not to oppose a judicial release request after appellant served two years. Appellant rejected the offers.

{¶4} On August 31, 2022, the trial court held a combined plea and sentencing hearing and appellee recited the parties' plea agreement. The trial court conducted a Crim.R. 11 colloquy and advised appellant of his rights and the effects of his decision to plead guilty. The court reviewed the signed plea form and jury waiver, reviewed the facts and charges in each case, and asked appellant if any drugs, alcohol, or mind-altering substances

influenced him.  The court advised and reviewed with appellant the constitutional rights he waived with his plea, including (1) the right to a jury trial, (2) the right to confront one's accusers, (3) the right to compulsory process to obtain witnesses, (4) the right to require appellee to prove guilt beyond a reasonable doubt, and (5) the privilege against compulsory self-incrimination.  The court also explained the mandatory nature of appellant's prison term, advised him of post-release control, and reminded appellant that the parties' sentencing recommendation did not control the court's sentencing decision.  Appellant expressed his understanding and agreement at each stage of the plea colloquy and affirmed his execution of the written plea form.  The court emphasized, "If you have any questions during the course of the proceeding, let me know.  We will go off record and you can ask your attorney any question that you might have.  Do you understand?"  Appellant replied, "Yes, ma'am."  Later, before the court accepted appellant's plea, the court said, "And prior to entering those pleas of guilty did you have the opportunity to discuss the same with your attorney?"  Appellant replied, "Yes, Your Honor."

{¶5}  After appellant changed his plea to guilty in both cases, the trial court proceeded to the sentencing portion of the hearing. The court provided appellant an allocution, at which, inter alia, he said, "I honestly did not go in [the] home."  The trial court

stated, "I appreciate your apology, sir."  The court then weighed

the purposes and principles of sentencing in R.C. 2929.11, the

seriousness and recidivism factors in R.C. 2929.12, and the

guidance in R.C. 2929.13, and adopted the joint recommendation from

the negotiated plea.

{¶6}  The trial court sentenced appellant to (1) serve a

minimum 8-year prison term on Count One in 21-CR-347, (2) serve a

36-month term on Count One in 22-CR-198, (3) serve a 12-month term

on Count Two in 22-CR-198, (4) pay $600 restitution, and (5) pay

costs.  The court further noted a rebuttable presumption of release

after serving the minimum stated prison term, or early presumptive

release date, whichever is earlier.  The court emphasized that

appellee agreed not to oppose judicial release at the 6-year mark

if appellant had a clean institutional report.  However, the court

noted that it still maintains the sole discretion to grant judicial

release.  This appeal followed.

I.

{¶7}  In his sole assignment of error, appellant asserts that

he did not enter a knowing, intelligent, and voluntary plea.

Specifically, appellant contends that the trial court failed to

ascertain that appellant understood the consequences of his plea

because at his sentencing hearing he indicated that he did not

enter the victim's house in contradiction of the element of

"trespass in an occupied structure . . . that is the permanent or temporary habitation of any person. . ."  Appellee, however, contends that the trial court fully informed appellant of the elements of burglary prior to his plea and that he readily acknowledged and admitted to having committed the allegations contained in the indictments.

{¶8}  "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary."  Crim.R. 11, *State v. Dangler*, 2020-Ohio-2765, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29 (1992).  Thus, if a defendant did not knowingly, intelligently, and voluntarily enter a plea, enforcement of that plea is unconstitutional.  *Id.; State v. Leib*, 2024-Ohio-1081, ¶ 13 (4th Dist.).  In general, appellate courts apply a de novo standard of review when evaluating a plea's compliance with Crim.R. 11(C). *State v. Nero*, 56 Ohio St.3d 106, 108-109 (1990).  Moreover, evidence of a written waiver form signed by the accused constitutes strong proof of a valid waiver.  *State v. Clark*, 38 Ohio St.3d 252, 261 (1988).

{¶9}  In the case sub judice, our review of the trial court proceeding reveals that appellant signed a written plea of guilty that explicitly acknowledged, among other things, that (1) his attorney explained his constitutional rights and consequences of

his plea, (2) he had confidence in his attorney, (3) he understood the elements contained in the indictment, nature of the charges and penalties, (4) he made the pleas of his own free will, (5) he had no questions to ask the court before entering the plea, (6) neither he nor his attorney had any competent evidence to offer to show that he was not guilty of the offense charged, and (7) he and his attorney believed that a factual basis for the plea exists.

{¶10} Moreover, at the plea hearing, in addition to reviewing appellant's constitutional rights that he waived, the trial court reviewed the four-page plea agreement, verified appellant's signature, thoroughly reviewed the indictments, and read the statutory language of each offense, including the offense of burglary.  In particular, the trial court asked, "Do you continue to wish to enter pleas of guilty as to all charges in both case numbers?"  Appellant replied, "Yes ma'am."  The court asked, "Do you have any questions before we proceed?"  Appellant replied, "No ma'am."  The court stated, "Okay.  If you have any questions during the course of the proceeding, let me know.  We will go off the record and you can ask your attorney any question that you might have.  Do you understand?"  Appellant replied, "Yes ma'am."

{¶11} After the trial court advised appellant of the constitutional rights he waived by his plea, one by one, and he stated that he understood each one.  After the court advised

appellant of various post-release control consequences, the court asked, "Do you understand that if you plea[d] guilty to these offenses, that you are making a complete admission you committed the allegations contained in the indictments?" Appellant replied, "Yes, Your Honor." After the court advised appellant that it could proceed directly with judgment and sentencing after the plea, and that the parties' sentencing recommendations do not bind the court, the court asked, "Mr. Smith, how does your client wish to plea[d] as to Count One of the indictment in Case No. 21-CR-347. . ." Appellant's counsel replied, "Guilty to all counts, Your Honor." The court then asked appellant, "And Mr. Earl . . . How do you wish to plea[d] to as to Count One of the indictment in Case No. 21-CR-347 [burglary]?" Appellant replied, "Guilty, Your Honor."

{¶12} The trial court asked yet again, "One last time, are these pleas of guilty of your own free will and accord," to which appellant replied, "Yes, Your Honor." The court asked if appellant had the opportunity to discuss the plea with his attorney before he entered it and he replied, "Yes, Your Honor." At this juncture the court accepted appellant's guilty pleas and stated, "Moving on to sentencing, does the prosecution and defense waive the issuance of a PSI?" Both agreed. The court then asked appellant if he wished to speak before the court imposed sentence. Appellant stated:

I would like to apologize. It's hard to do. Give me a minute ma'am. That day I had a bad tooth and uh, I'm sorry, this is hard to say. A friend of mine gave me a, it's called a Roxy, I took it. And uh I come through your yard and there was a mower sitting there outside your door that had some luggage on it. I honestly did not go in [the] home, and I shouldn't have touched that, and I thought something looked wrong and I seen the door open and window broke there, and I should have called the law. Instead of calling the law, I took the stuff. It was wrong and I shouldn't have done that. And I do apologize ma'am. And (unintelligible) really dumb what I done. And I hope you forgive me and I'm sorry. And ma'am, I do apologize for breaking that monitor. I shouldn't have done that. That was, that was wrong. You all trusted me with something, and I turned around and pretty much stabbed you in the back with it. I shouldn't have done that. I apologize.

{¶13} Despite appellant's acknowledgments, both in court and in his written plea, he now appears to argue that he did not understand the elements of the offense or that he asserted his innocence, given his post-plea statement, "I honestly did not go in [the] home." We note that the trial court did not take the opportunity to comment on appellant's statements or ask follow-up questions.

{¶14} As noted above, "a defendant's plea must be entered knowingly, intelligently, and voluntarily in order for the plea to be constitutional under the United States and Ohio Constitutions." *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). "To ensure the finality of a proper guilty plea, Crim.R. 11(C) provides a framework for informing a defendant of his or her constitutional

rights." *State v. Ballard*, 66 Ohio St.2d 473, 479 (1981).  Under Crim.R. 11(C)(2), in felony cases, "the court may refuse to accept a plea of guilty . . . , and shall not accept a plea of guilty . . . without first addressing the defendant personally . . . and doing all of the following:"

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶15}** The Supreme Court of Ohio has instructed that the underlying purpose of Crim.R. 11(C) is to convey certain information to allow the defendant to make a voluntary and intelligent decision whether to plead guilty.  *Ballard* at 479-480; *State v. Woodworth,* 2024-Ohio-2756, ¶ 12 (6th Dist.).  In the present case, appellant does not challenge the trial court's compliance with Crim.R. 11, but rather argues that the court's

compliance with the rule is not sufficient because his sentencing statement to the court indicated that he did not understand the nature of the charges to which he entered his plea, or that he decided to assert his innocence in spite of his prior plea.

{¶16} Crim.R. 11(C) does not require the trial court to explain the elements of the offense before accepting a plea. In fact, as the Sixth District recently observed, the Supreme Court of Ohio has held "that trial courts need not engage in a detailed recitation of the elements of a charge before accepting a plea." *Woodworth* at ¶ 14, citing *State v. Fitzpatrick*, 2004-Ohio-3167, ¶ 57 ("the Constitution does not require that a trial court explain the elements of the charge, at least where the record contains a representation by defense counsel that the nature of the offense has been explained to the accused."). *See also State v. Vialva*, 2017-Ohio-1279, ¶ 9 (8th Dist.)("[C]ourts are not required to explain the elements of each offense * * *."); *State v. Giovanni*, 2009-Ohio-3333, ¶ 19 (7th Dist.)("[T]he trial court has no obligation to explain the elements of the charge."). However, we observe that in the case at bar the trial court fully explained the elements of burglary: "George M. Earl on or about September 5, 2021, did, by force, stealth or deception trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure. . ."

{¶17} Appellant contends that, because he "maintained his innocence while also desiring to enter a guilty plea," the trial court "was obliged to follow the enhanced procedure announced in *North Carolina v. Alford*, 400 U.S. 24 (1970)." When a defendant enters an *Alford* plea, the defendant maintains innocence but consents to punishment: "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 (1970). The Second District explained the process in *State v. Padgett*, 67 Ohio App.3d 332, 338-339 (2d Dist.1990):

> Because an *Alford* plea involves a rational calculation that is significantly different from the calculation made by a defendant who admits he is guilty, the obligation of the trial court with respect to the taking of an *Alford* plea is correspondingly different. The trial judge must ascertain that notwithstanding the defendant's protestations of innocence, he has made a rational calculation that it is in his best interest to accept the plea bargain offered by the prosecutor.
>
> . . .
>
> Where the defendant interjects protestations of innocence into the plea proceedings, and fails to recant those protestations of innocence, the trial court must determine that the defendant has made a rational calculation to plead guilty notwithstanding his belief that he is innocent. This requires, at a minimum, inquiry of the defendant concerning his reasons for deciding to plead guilty notwithstanding his protestations of innocence; it may require, in addition, inquiry concerning the state's

evidence in order to determine that the likelihood of the defendant's being convicted of offenses of equal or greater magnitude than the offenses to which he is pleading guilty is great enough to warrant an intelligent decision to plead guilty.

**{¶18}** Other courts have held that when a written affirmative assertion of an *Alford* notation exists on a plea form, and some affirmation to the trial court of an *Alford* plea exists, a more detailed Crim.R. 11 colloquy is required to inquire about the reason for the *Alford* plea. *State v. Evans,* 2021-Ohio-829, ¶ 26 (5th Dist.), citing *State v. Morrison*, 2014-Ohio-688, ¶ 13 citing *State v. Hayes*, 101 Ohio App.3d 73 (3rd Dist.1998).

**{¶19}** In *Evans*, the trial court also held a combined change of plea and sentencing hearing.  After the plea colloquy, the court found Evans' guilty plea to be "freely, voluntarily, and understandingly" made, and the court found Evans guilty based on the facts the prosecutor read.  *Id.* at ¶ 10.  After the trial court sentenced Evans, he made a statement where he denied that he stole the truck in question and claimed on appeal that the trial court should have rejected his guilty plea.  *Id.* at ¶ 14, 19.  The Fifth District emphasized that to determine if Evans made protestations of innocence, the court must review the record, including the plea form and the plea hearing transcript.  *Id.* at ¶ 27.  The Fifth District observed that Evans' plea form contained no written

assertion of an *Alford* notation. Further, the court concluded that no affirmation of an *Alford* plea to the trial court occurred at the plea hearing. *Id.* The Fifth District further noted that Evans did not protest his innocence until after the trial court rendered his sentence. Thus, the court affirmed. *Id.* at ¶ 28. Similarly, in the case sub judice, our review of the record reveals no *Alford* assertion on the written plea agreement and no *Alford* affirmation during the trial court's combined plea and sentencing hearing.

**{¶20}** Again, appellant argues that his single statement at the conclusion of the lengthy change of plea and sentencing hearing constituted a protestation of innocence: "I honestly did not go in [the] home, and I shouldn't have touched that, and I thought something looked wrong and I seen the door open and window broke there, and I should have called the law. Instead of calling the law, I took the stuff." Appellant cites this court's decision in *State v. Wright*, 1995 WL 368319 (4th Dist. Jun. 19, 1995) in support. Wright faced trafficking in marijuana and aggravated robbery charges. After plea negotiations and the State agreed to dismiss a gun specification and recommend a lenient sentence, at the plea hearing Wright pleaded guilty to all charges. However, two days later Wright wrote a letter to the trial court and requested to withdraw his guilty plea. The trial court acknowledged that it received the letter and considered it a motion

to withdraw Wright's guilty plea, but the letter did not appear in the record and the trial court did not respond to it. When Wright appeared at his sentencing hearing, the court had concluded nearly all of the sentencing procedure when it offered appellant allocution. *Id.* at *1-2. At that point, Wright asked the court if it had received his letter. After the court acknowledged receipt, Wright stated, "I would like to withdraw my plea and have my charges separated and take them to trial." The court asked for the reason, and Wright replied, "Because I'm not guilty of one robbery and marijuana charge." *Id.* The court affirmed in part and reversed in part and concluded that, "[a]t a minimum, appellant is entitled to explain why he entered a guilty plea originally and the nature of the evidence that supports his claim of innocence." *Id.* at *6.

{¶21} We, however, believe that *Wright* is inapplicable to the case sub judice. Wright submitted a letter and requested to withdraw his plea, which did not occur in the case at bar. Further, Wright made an oral motion to withdraw his guilty plea, which also did not occur in the case at bar. Moreover, as noted above, appellant in the case at bar made these statements at the sentencing portion of the hearing, after he entered his plea, after the trial court accepted the plea, and after the court found him guilty. *See Woodworth* at ¶ 16.

In *Woodworth,* the Sixth District summarized:

Ohio courts have recognized that a trial court is not required to measure a claim of innocence against a willingness to waive trial - as may be required in accepting a plea under *North Carolina v. Alford* - where protestations of innocence occur *after* the court has accepted a plea and the defendant has not sought to withdraw his plea. *State v. Alvelo*, 2017-Ohio-742, ¶ 22-27 (8th Dist.)(finding that court had no duty to inquire into defendant's reason for pleading guilty where protestations of innocence occurred at sentencing and defendant did not move to withdraw his guilty plea); *State v. Bartley*, 2001 WL 604219, *5 (10th Dist. Jun. 5, 2001)(noting that it was only at sentencing that defendant denied the requisite mental state for the offense, and commenting that he did not ask to withdraw his guilty plea); *State v. Millhouse*, 2002-Ohio-2255, ¶ 17 (8th Dist.)(observing that defendant never expressed desire to withdraw guilty pleas even though at sentencing, he denied facts supporting conviction).

*Id.* at ¶ 17.

**{¶22}** Thus, the Sixth District concluded that Woodworth made no protestations of innocence at the plea hearing that may have warranted additional scrutiny by the trial court. *Id.*

**{¶23}** Finally, in *State v. Sheets*, 2023-Ohio-2562 (4th Dist.), we considered a similar case in which a defendant at a combined plea and sentencing hearing claimed that her statement made during allocution, which denied knowledge of her husband's intention to murder the victims, indicated her protestation of innocence in connection with her plea or her confusion regarding the nature of the offenses to which she pleaded guilty. *Id.* at ¶ 18. We concluded that Sheets entered a knowing, intelligent, and voluntary

guilty plea and the trial court did not err when it accepted the pleas. *Id.* at ¶ 31.  We noted that "the plea portion of the hearing had been definitively concluded at the time Sheets made her statement," and we found "no alleged protestation of innocence made until after the pleas had already been accepted and the court had moved on to sentencing."  *Id.* at ¶ 24.

{¶24} Similarly, after our review in the case sub judice we conclude that (1) appellant entered a knowing, intelligent, and voluntary guilty plea, and (2) appellant's guilty plea precluded his alleged challenge to the factual basis for his conviction.  Here, the trial court conducted a lengthy change of plea hearing to ensure that appellant fully understood the nature of the offense and effect of his plea.  At the conclusion of the sentencing portion of the hearing, appellant made a statement that, inter alia, he did not enter the home.  Although it would have been helpful if the trial court made a specific inquiry and clarification concerning appellant's statement, it appears that appellant offered this last minute assertion to cast his conduct in the best possible light and garner sympathy or favorable treatment from the court prior to the pronouncement of his sentence.  While we do not question appellant's desire to characterize his conduct in a manner that he believes may somewhat lessen his culpability, his statement is not a protestation of innocence that would cause

the court to question the factual underpinning of the charge. Here, the court provided appellant ample opportunity to express any disagreement with any element of any of the charged offenses.

{¶25} Therefore, after our review we conclude that appellant's post-plea assertions did not affect the voluntariness of his guilty plea. Accordingly, for the foregoing reasons, we overrule appellant's assignment of error, and we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *State v. Earl*, 2024-Ohio-5682.]

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                        Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal

commences from the date of filing with the clerk.